IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

AZ DNR, LLC, d/b/a ERC, LLC,       )
                                   )
              Plaintiff,           )
                                   )
v.                                 )          Case No. 13-2599-JWL
                                   )
LUXURY TRAVEL BROKERS, INC.        )
d/b/a Flyer Miles, et al.,         )
                                   )
              Defendants.          )
_____    )

## REPORT AND RECOMMENDATION

This is a contract case which arises from the souring of the parties' business relationship. The case was filed on November 22, 2013, but due to a pattern of inactivity by defendants and their counsel, it has not advanced much past the initial pleading stages. Defendants' original answer unreasonably asserted that defendants were "without information or knowledge sufficient to form a belief" as to nearly two-thirds of the factual allegations in plaintiff's amended complaint.[1]  On June 30, 2014, the undersigned U.S. Magistrate Judge, James P. O'Hara, entered an order requiring defendants to file a revised answer by July 7, 2014, or to show cause by that date why the original answer did not violate Fed. R. Civ. P. 11(b).[2]  Defendants filed an amended answer on July 8, 2014, which

_____

[1]ECF doc. 18.

[2]ECF doc. 35 at 9.

13-2599-JWL-39.wpd

contained the same deficient assertions as their original answer.[3]

Three motions related to the amended answer have been filed. First, defendants have filed a motion for leave to file a second amended answer which addresses deficiencies in their earlier answers and which asserts counterclaims for the first time **(ECF doc. 39)**. Second, plaintiff has filed a motion to strike the amended answer (as well as the original, deficient answer) for failure to comply with the June 30, 2014 order, and to enter default judgment against defendants **(ECF doc. 44)**. Defendants filed no response to the motion to strike by the response deadline, and instead, one week later, filed a motion for extension of time to respond **(ECF doc. 49)**. Because defendants have demonstrated a continuing pattern of inaction in this case and have failed to meet their burden for amending the deadline for filing a new answer, the undersigned respectfully recommends to the presiding U.S. District Judge, John W. Lungstrum, that defendants' motions be denied, that plaintiff's motion be granted, and that default judgment be entered against defendants.

The pending motions are most logically addressed in the reverse order of which they were filed.

## I.   Motion for Extension of Time to Respond to Motion to Strike (ECF doc. 49)

As noted above, defendants did not file a motion for extension of time to respond to plaintiff's motion to strike their answers until one week after their response was due. When a motion for extension of time is filed after the specified time expires, the court will only

---

[3]ECF doc. 36.

grant the extension request if it finds good cause for the delay upon a showing that the party

failed to act because of excusable neglect.[4]  This standard "requires both a demonstration of

good faith by the parties seeking the enlargement and also it must appear that there was a

reasonable basis for not complying within the specified period."[5]

Defendants do not specifically explain why they could not meet the August 5, 2014

response deadline.[6]  Instead, they state generally that the "press of other urgent and important

business made [it] impossible" for their counsel "to act in a timely manner" or to

communicate the deadline to them.[7]   The Tenth Circuit has made it clear that counsel's

"busy workload does not establish excusable neglect" under Rule 6(b).[8]  Because defendants

---

[4]Fed. R. Civ. P. 6(b)(1)(B); D. Kan. Rule 6.1(a).

[5]*Four Seasons Sec. Laws Litig. v. Bank of Am.*, 493 F.2d 1288, 1290 (10th Cir. 1974).

[6]Defendants discuss the reasons why they did not timely respond to a separate motion to stay deadlines filed by plaintiff (ECF doc. 45), but all the reasons involve events that occurred after August 5, 2014.

[7]ECF doc. 48 (which ECF doc. 49 incorporates by reference) at 4.  *See also id.* ("[T]his situation, including the inability of counsel to communicate effectively with opposing counsel and his own clients is due to a recent and largely unpredictable extreme demand on counsel's time and resources.").

[8]*Stringfellow v. Brown*, No. 95-7145, 105 F.3d 670, 1997 WL 8856, at *2 (10th Cir. 1997); *see also Ghamrawi v. Case & Assocs. Props. Inc.*, 116 F. App'x 206, 210 (10th Cir. 2004) (finding no excusable neglect where "counsel's workload was out of control and counsel could not timely file the request because of other deadlines"); *Delta Airlines v. Butler*, 383 F.3d 1143, 1145 (10th Cir. 2004) ("[I]nadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute excusable neglect." (internal citation omitted));  *Hanson v. City of Oklahoma City*, No. 94-6089, 37 F.3d 1509, 1994 WL 551336, at *4 (10th Cir. 1994) ("On the merits, we find counsel's vague references to 'previously scheduled legal commitments' insufficient to establish excusable neglect under Rule

---

have given no other basis for their failure to respond to plaintiff's motion to strike answers or to timely seek an extension for so doing, the undersigned recommends that Judge Lungstrum deny defendants' motion for extension of time to respond to the motion to strike.

## II.      Motion to Strike Answer and Amended Answer (ECF doc. 44)

Plaintiff asks the court to strike the amended answer that defendants filed on July 8, 2014.[9]  Plaintiff asserts that, in addition to being filed a day late, the amended answer fails to correct *any* of the Rule 11(b) problems identified in the undersigned's June 30, 2014 order.[10]  In that order, the undersigned analyzed defendants' original answer and found that it was "clear that certain responses in defendants' answer are not reasonable or based on a reasonable inquiry."[11]  Because Rule 11(b) imposes a "reasonable inquiry" requirement on pleadings, the undersigned concluded that "defense counsel likely violated Rule 11(b) in filing defendants' answer."[12]  However, because plaintiff's counsel did not comply with the "safe harbor" provisions of Rule 11(c), the undersigned declined to enter sanctions against defendants at that time.  Instead, the undersigned directed defendants to file a compliant

---

6(b)(2)."); *McLaughlin v. City of LaGrange*, 662 F.2d 1385, 1387 (11th Cir. 1981) (ruling that the fact that a solo practitioner is engaged in the preparation of other cases does not establish excusable neglect under Rule 6(b)), *cited with support in Hamilton v. Water Whole Int'l Corp.*, 302 F. App'x 789, 800 (10th Cir. 2008).

[9]ECF doc. 36.

[10]ECF doc. 35.

[11]*Id.* at 6.

[12]*Id.* at 7.

answer:

> [T]he court, on its own motion, orders defendants to file a revised answer by **July 7, 2014**, or to show cause by that same date why the current answer does not violate Rule 11(b) (which, as should be clear from the discussion above, would be an uphill battle). Defendants are warned that should they fail to satisfy at least one of these directives, the court will likely sanction defendants by striking the answer and entering default against defendants.[13]

Defendants filed the amended answer six hours after the court's July 7, 2014 deadline. Although this fact is bothersome (and creates the appearance that defendants are flouting the court's indulgence after the court noted defendants' pattern of untimeliness and inaction), it is the least of defendants' problems. Much more significant is the fact that the amended answer clearly—and without explanation—did not correct *any* of the Rule 11(b) deficiencies identified by the court.[14] Rather, the amended answer is a near twin of the original answer, making only stylistic changes and adding a "thirteenth affirmative defense."[15] Additionally, defendants did not attempt to show cause why the original answer did not violate Rule 11(b). Because it is undeniable that defendants failed to satisfy either of the undersigned's directives in the June 30, 2014 order,[16] the undersigned recommends that Judge Lungstrum

---

[13]*Id.* at 9 (emphasis in original).

[14]The amended answer again contained the representation that "Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraphs 8, 9, 10, 11, 12, 16, 17, 18, 19, 20, 22, 24 26, 27, and 30." ECF doc. 36 at 2.

[15]Compare ECF docs. 18 and 36.

[16]Based on this finding, there is nothing defendants could say in a response to the motion to strike (should Judge Lungstrum reject the undersigned's recommendation to deny

strike defendants' answer and amended answer.  The undersigned will address below plaintiff's request for the entry of default judgment in plaintiff's favor.

## III.   Motion for Leave to File a Second Amended Answer (ECF doc. 39)

On July 16, 2014, defendants filed their motion for leave to file a second amended answer with counterclaims.[17]  The motion asks that defendants be permitted to revise their answer to (1) include information learned "during recent investigation by counsel" and (2) add counterclaims against plaintiff which defendants had mistakenly believed their counsel had included in their original answer.[18]  The proposed second amended answer both addresses the Rule 11(b) problems in defendants' earlier answers and includes the addition of counterclaims for breach of contract, fraud, and intentional interference with contractual relations.[19]  Plaintiff opposes the motion, arguing that defendants have not met the standards

defendants' request to respond out of time), which would dictate a different outcome.

[17]ECF doc. 39.  Defendants had filed a motion to amend the scheduling order to permit them to file counterclaims about a week earlier, on July 8, 2014.  ECF doc. 37.  Defendants did not attach a proposed amended answer to that motion (as required by D. Kan. Rule 15.1(a)(2)), but the motion and supporting memorandum indicated only that defendants sought to add counterclaims to their answer, not to revise their responses to the numbered paragraphs in the amended complaint.  When the court received defendants' second motion to amend the scheduling order to permit them to file a second amended answer and counterclaim on July 16, 2014, the undersigned's clerk contacted defense counsel and inquired whether the second motion mooted the first motion.  Upon confirmation from defense counsel that it did, the undersigned entered an order mooting the first motion to amend.  ECF doc. 42.

[18]ECF doc. 39 at 7–8.

[19]ECF doc. 39-1.  No counterclaims were asserted in earlier answers.

for untimely amendment.

Under Fed. R. Civ. P. 15(a)(2), once a responsive pleading has been filed and twenty-one days have passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Rule 15 dictates that the court "should freely give leave when justice so requires."[20] When the deadline set in the scheduling order for amending pleadings has passed, however, Fed. R. Civ. P. 16(b)(4) may also be implicated.[21] Rule 16(b)(4) provides that a scheduling order may be modified "only for good cause." Thus, courts in the District of Kansas determine whether the Rule 16(b)(4) good-cause standard has been established before proceeding to determine if the more liberal Rule 15(a) standard has been satisfied.[22] Because the scheduling order set a May 15, 2014 deadline for amending the pleadings,[23] but defendants did not file their motion for leave to amend until July 16, 2014, the court will follow this two-step approach.

To establish good cause under Rule 16(b)(4), a moving party must show that it could

---

[20]Fed. R. Civ. P. 15(a)(2).

[21]The Tenth Circuit "has not yet considered whether Rule 16(b)(4) must be met when motions to amend pleadings would necessitate a corresponding amendment of scheduling orders." *U.S. ex rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1166 (10th Cir. 2009) (citing *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 n.4 (10th Cir. 2006)).

[22]*See, e.g.*, *Butler Nat'l Serv. Corp. v. Navegante Grp., Inc.*, Nos. 09-2466, 09-2554, 10-2444, 2011 WL 941017, at *2 (D. Kan. March 16, 2011); *Miller v. Union Pac. R.R.*, No. 06-2399, 2008 WL 4271906, at *2 (D. Kan. Sept. 12, 2008); *Lipari v. U.S. Bancorp, N.A.*, No. 07-2146, 2008 WL 2944909, at *2 (D. Kan. July 28, 2008).

[23]ECF doc. 22.

not have met the scheduling-order deadline for amending its answer even if it had acted with "due diligence."[24]   In making this showing, the moving party "must provide an adequate explanation for any delay."[25]   "Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief."[26]   Neither the bad faith of the moving party, nor the lack of prejudice to the non-moving party is a focus of the inquiry.[27]   Whether to modify the scheduling order lies within the court's sound discretion.[28]

Defendants have given two separate reasons for not meeting the deadline to amend their answer.   First, with respect to their request that they be given leave to amend their

---

[24]*Butler*, 2011 WL 941017, at *2; *Manuel v. Wichita Hotel Partners, LLC*, No. 09-1244, 2010 WL 3861278, at *1–2 (D. Kan. Sept. 20, 2010) (quoting *Grieg v. Botros,* No. 08-1181, 2010 WL 3270102, at *3 (D. Kan. Aug. 12, 2010))*; Miller*, 2008 WL 4271906, at *2; *Denmon v. Runyon*, 151 F.R.D. 404, 407 (D. Kan. 1993).

[25]*Strope v. Collins*, 315 F. App'x 57, 61 (10th Cir. 2009); *see also Sprint Commc'ns Co. v. Cable One, Inc.*, No. 11-2685, 2014 WL 588068, at *2 (D. Kan. Feb. 14, 2014) ("The Tenth Circuit has noted that Rule 16(b)(4)'s 'good cause' standard 'requires the moving party to show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for any delay.'" (quoting *Minter*, 451 F.3d at 1205 n.4)). The undersigned notes that this standard is similar, if not identical, to the "good cause" standard of Rule 6(b), discussed in Section I above.   In setting out the Rule 16(b) "good cause" standard, courts in this district frequently rely on *Putnam v. Morris*, 833 F.2d 903, 904 (10th Cir. 1987), which discussed  the "good cause" standard of Rule 6(b).   *See, e.g., State Farm Fire & Cas. Co. v. Bell*, No. 12-2456, 2013 WL 5530272, at *2 (D. Kan. Oct. 4, 2013); *Lone Star Steakhouse and Saloon, Inc. v. Liberty Mut. Ins.*, No. 02-1185, 2003 WL 21659663, at *2 (D. Kan. March 13, 2003).

[26]*Pouncil v. Branch Law Firm*, No. 10-1314, 2011 WL 5837230, at *1 (D. Kan. Nov. 21, 2011) (quoting *Lone Star*, 2003 WL 21659663, at *2).

[27]*Manuel*, 2010 WL 3861278, at *2; *Greig*, 2010 WL 3270102, at *3.

[28]*Paris v. Sw. Bell Tel. Co.*, 94 F. App'x 810, 816 (10th Cir. 2004).

responses to the numbered paragraphs of the amended complaint (and thereby correct the inadequacies identified in the undersigned's June 30, 2014 order), defendants state only that their counsel attained "information during [a] recent investigation."[29] That is the entirety of defendants' argument for an extension. Defendants are completely silent as to why their counsel could not have conducted this investigation (which presumably entailed counsel asking defendants about facts within defendants' direct knowledge)[30] before the May 15, 2014 scheduling-order deadline for amending the pleadings, or at least before the extended July 7, 2014 deadline given by the undersigned in the June 30, 2014 order. Defendants' single-sentence explanation fails to "provide an adequate explanation for any delay."[31] Thus, the court has nothing before it on which it could make a finding that there is good cause to amend the scheduling order to permit defendants additional time to file an answer with revised substantive responses to the allegations in plaintiff's amended complaint. The undersigned recognizes that the law favors resolution of disputes on their merits, rather than

---

[29]ECF doc. 39 at 8.

[30]*See* ECF doc. 35 at 6 ("As mentioned above, the answer states that defendants are 'without information or knowledge sufficient to form a belief' as to a majority of the factual allegations asserted by plaintiff. Yet the facts alleged are unquestionably within defendants' direct knowledge.").

[31]*Strope*, 315 F. App'x at 61; *see also Butler*, 2011 WL 941017, at *3 ("Navegante's general, conclusory statements that it gained new information during discovery conducted after the Scheduling Order deadline for amending pleadings fall short of demonstrating that Navegante could not have met the May 6, 2010 deadline even if Navegante had acted with due diligence.").

on procedural deficiencies,[32] but the court cannot establish defendants' burden for them.

Defendants' second reason for not meeting the deadline to amend pleadings pertains only to defendants' request that they be permitted to assert counterclaims against plaintiff. Defendants state that they retained Kenneth Worth as counsel and asked him to prepare an answer and counterclaim for filing by their local counsel, Phillip Gibson. They state that Mr. Worth informed them that an answer and counterclaim had been filed. Defendants "recently" parted ways with Mr. Worth and "engaged attorney Samuel Lockhart to represent them, with Mr. Gibson to continue to act as local counsel."[33] Mr. Lockhart reviewed the litigation file and informed defendants (or Mr. Gibson, who then informed defendants)[34] that no counterclaim had been filed. Defendants assert that they are "blameless" in their failure to file a counterclaim before the deadline to amend pleadings because they were misled by Mr. Worth.[35] They state that they do not have access to the PACER electronic filing system to ensure that counsel made necessary filings, and argue that in any event, "it is beyond reason for a represented party to have to resort to such measures to ensure that their counsel is

---

[32]*Davis v. Operation Amigo, Inc.*, 378 F.2d 101, 103 (10th Cir. 1967).

[33]ECF doc. 39 at 4.

[34]Defendants' brief at one point states that Mr. Gibson informed them that no counterclaim had been filed, *id.* at 2, and at another point states that Mr. Lockhart gave them this information, *id.* at 4.

[35]*Id.* at 3.

following through with what he or she promises to do."[36]  Defendants "implore the court not to punish" them for Mr. Worth's "missteps," and represent that Mr. Lockhart "will file a petition for admission pro hac vice contemporaneously with the filing of this motion."[37]

As an initial matter, the undersigned notes that defendants have provided no affidavit or other evidentiary support for their allegations about Mr. Worth's "missteps."  But supposing them all to be true, defendants have failed to show good cause for an extension of the scheduling-order pleading deadline for asserting counterclaims.  First, defendants do not explain why Mr. Gibson was unaware of the absence of a counterclaim in their responsive pleading.  Mr. Gibson is, and always has been, the only counsel of record for defendants in this case.[38]  Despite defendants' promise to the contrary, Mr. Lockhart (like Mr. Worth) has never entered an appearance or sought pro hac vice admission.  As counsel signing defendants' answer, Mr. Gibson clearly had an obligation to read it and, more than

--------

[36]*Id.* at 5.

[37]*Id.*

[38]Though it does not affect the court's analysis of the instant motions, the undersigned notes that on August 28, 2014, he was informed by the Clerk's Office that the Clerk is investigating whether Mr. Gibson is a lawyer in good standing with this court.  According to the Clerk, information was provided to the court indicating that Mr. Gibson was suspended from the practice of law by the Missouri Supreme Court on January 12, 2011, and has not been reinstated.  In his May 30, 2014 renewal application to practice in this court, he indicated that he was admitted to practice law in the United States District Court for the Western District of Missouri and had "no disciplinary or suspension proceedings pending against [him] in any court of the United States or of any state . . . ."  Although, as noted, the investigation is ongoing, it appears that this was a fraudulent statement and that defendants' only counsel of record is practicing in this court under false pretenses.

that, to ensure that it was well founded.[39]  Even if another attorney had entered an appearance

in this case pro hac vice—such that Mr. Gibson was acting as "local counsel" in a more

limited role—Mr. Gibson would have still been required to "participate meaningfully" in this

proceeding.[40]   Defendants do not state that Mr. Gibson failed in his obligations, so he

presumably  was  aware  at  the  time  defendants'  original  answer  was  filed  that  no

counterclaims were asserted.

Second, even if both Mr. Gibson and Mr. Worth failed to follow defendants' directive

to assert counterclaims, the Supreme Court made it clear in *Link v. Wabash R.R. Co.* that a

client is bound by his counsel's inaction.[41]  The Court reasoned that when a party chooses an

attorney to represent him in an action,

> he cannot . . . avoid the consequences of the acts or omissions of this freely
> selected agent.   Any other notion would be wholly inconsistent with our
> system of representative litigation, in which each party is deemed bound by the
> acts of his lawyer-agent and is considered to have notice of all facts, notice of
> which can be charged upon the attorney.[42]

To hold otherwise, i.e., to hold that a party "should not be penalized for the omissions of his

---

[39]*See* Fed. R. Civ. P. 11(b); ECF doc. 35 (June 30, 2014 Order) at 5 ("Rule 11(b) sets a means by which litigants and their attorneys certify to the court that any papers filed are well founded" (internal quotation and citation omitted)).

[40]D. Kan. Rule 83.5.4(c).   The undersigned recalls advising Mr. Gibson of this requirement during the April 11, 2014 scheduling conference.

[41]370 U.S. 626, 633–34 (1962).

[42]*Id.* (internal quotation and citation omitted).

own attorney," would be to "visit[] the sins" of the errant attorney upon the opposing party.[43]

Because a party will be held to his attorney's actions or, as in this case, inactions, parties

have an implicit responsibility to assert at least a minimum level of supervision over their

attorneys.[44]  Despite defendants' assertion to the contrary, the court's PACER system is open

to the public—defendants cannot credibly claim that they had no ability to access it.

Moreover, it is not unreasonable for a party to demand that his counsel provide him copies

of all important filings in his case.  The absence of bad faith on the part of defendants, as

noted above, is not relevant to the Rule 16(b) good-cause analysis.  Even if defendants were

simply careless (which is the best that can be said of their lackadaisical approach to this

matter), "[c]arelessness is not compatible with a finding of diligence and offers no reason for

---

[43]*Id.* at 634 n.10.  *See also, United States v. $285,350.00 in U.S. Currency*, 547 F. App'x 886, 887 (10th Cir. 2013) (citing *Link* and upholding district court's determination that party, through the omissions of his counsel, failed to file an answer and present a meritorious defense); *Queen v. TA Operating, LLC*, 734 F.3d 1081, 1094 (10th Cir. 2013) (ruling in the bankruptcy context that "a client is bound by the acts of her attorney and the remedy for bad legal advice rests in malpractice litigation" (internal quotation and citation omitted)); *S.E.C. v. Fox*, 529 F. App'x 947, 949 (10th Cir. 2013) ("[I]n 'our system of representative litigation,' attorney negligence is an insufficient basis for a party to 'avoid the consequences of the acts or omissions of [a] freely selected [attorney].'" (quoting *Link*, 370 U.S. at 633–34)).

[44]*Fla. Physician's Ins. Co., v. Ehlers*, 8 F.3d 780, 784 (11th Cir. 1993) (holding defendant "had a duty to act with some diligence to ensure that his attorney was protecting his interests); *Damiani v. R.I. Hosp.*, 704 F.2d 12, 16 (1st Cir. 1983) ("The argument that the sins of the attorney should not be visited on the client is a seductive one, but its siren call is overborne by the nature of the adversary system."); *Jones v. Estelle*, 693 F.2d 547, 549 (5th Cir. 1982) (ruling that there is an implicit burden on a party to make periodic inquiries into the course of the proceedings).

a grant of relief."[45]

Third, defendants do not state when they personally learned of the omitted counterclaims—they only vaguely state that counsel whom they "recently" obtained discovered the omission. Without knowing the timing of the situation, it is impossible for the court to evaluate whether defendants acted diligently in seeking amendment once they personally became aware that they had not asserted a counterclaim.

Based on these reasons, the undersigned finds that defendants have failed to demonstrate good cause to amend the scheduling order to allow defendants to file a second amended answer. Because defendants have not met the Rule 16(b) requirement, the court is not required to consider whether defendants have met the amendment standards promulgated under Rule 15(a).[46] However, the undersigned will briefly address Rule 15(a)'s applicability. As mentioned above, Rule 15(a) anticipates the liberal amendment of pleadings. Nonetheless, a court may deny leave to amend "upon a showing of undue delay, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or undue prejudice to the opposing party, or futility of amendment."[47] Plaintiff argues that leave to amend defendants' answer should be denied because defendants unduly delayed in

---

[45]*Pouncil*, 2011 WL 587230, at *1.

[46]*Five Rivers Ranch Cattle Feeding, LLC v. KLA Env't Servs., Inc.*, No. 08-2185, 2010 WL 2609426, at *3 (D. Kan. June 25, 2010); *Lipari*, 2008 WL 2944909, at *3.

[47]*Castleglen, Inc. v. Resolution Trust Corp.*, 984 F.2d 1571, 1585 (10th Cir. 1993) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

seeking the amendment, because plaintiff would be prejudiced by any allowed amendment, and because the amendment, if granted, would be futile.

Rule 15(a)'s "undue delay" analysis is similar to the "good cause" analysis under Rule 16(b).[48] "The court appropriately may deny leave to amend 'when the party filing the motion has no adequate explanation for the delay.'"[49] For substantially the same reasons that the undersigned concludes that defendants have not shown good cause for amending the scheduling order, the undersigned concludes that defendants have unduly delayed seeking amendment. Defendants have provided no adequate explanation for why they did not seek leave to amend their answer sooner. The undersigned recommends that defendants' motion for leave to amend their answer be denied on the basis of undue delay.[50]

Based on this conclusion, the court need not address plaintiff's additional arguments that amendment of the answer (including the addition of counterclaims) would create prejudice and be futile. Should Judge Lungstrum feel compelled to address these arguments, however, the undersigned notes that they have gone uncontested by defendants. Plaintiff

---

[48]*Kron-CIS GmbH v. LS Indus., Inc.,* No. 12–1473, 2014 WL 1309068, *2 (D. Kan. March 28, 2014); *Wilson v. Wal-Mart Stores, Inc.*, No. 07-2263, 2008 WL 2622895, at *4 (D. Kan. June 30, 2008) (citing *Minter*, 451 F.3d at 1205 n. 4).

[49]*Compton v. Rent-A-Center, Inc.*, 350 F. App'x 216, 220 (10th Cir. 2009) (quoting *Minter*, 451 F.3d at 1206); *see also Castleglen*, 984 F.2d at 1585 (holding that a court may deny leave to amend a pleading upon a showing of undue delay).

[50]*Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365-66 (10th Cir. 1993) ("It is well settled in this circuit that untimeliness alone is a sufficient reason to deny leave to amend . . . especially when the party filing the motion has no adequate explanation for the delay.").

asserted these arguments in its response to defendants' motion to amend the scheduling order,[51] and following their established pattern, defendants did not file a reply brief.

Because defendants have failed to demonstrate good cause for amending the scheduling order and have unduly delayed in seeking leave to file a second amended answer (thus leaving only deficient answers on file), the undersigned has no choice but to recommend the entry of default judgment against defendants. The undersigned recognizes that this would inflict a harsh sanction on defendants based largely on the fault of their counsel, but the Tenth Circuit has upheld the entry of default judgment in such situations.

In *United States v. $285,350.00 in U.S. Currency*, the Tenth Circuit upheld the entry of default where a claimant to in rem currency failed to file an answer to the complaint, even where the claimant alleged that the failure to follow the applicable rules was the fault of his counsel.[52] The claimant filed a claim to the currency, but despite two warnings by the government, failed to file an answer to the complaint.[53] The district court then granted the government's motion to strike his claim, the clerk entered default against the claimant, and the district court entered a default judgment.[54] The claimant moved to set aside the default judgment, arguing that his failure to file the answer was the fault of his attorney, not him. The district court, applying the standards of Fed. R. Civ. P. 60(b), refused to set aside the

---

[51]ECF doc. 43.

[52]547 F. App'x at 887.

[53]*Id.*

[54]*Id.*

default judgment.[55]   Citing *Link's* rejection of "the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client,"[56] the Tenth Circuit upheld the entry of default judgment.

Likewise, in *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, the Tenth Circuit upheld the district court's refusal to set aside a default judgment entered against a defendant who failed to file a responsive pleading.[57]   Although recognizing that default judgments are disfavored, the court stated, "a workable system of justice requires that litigants not be free to appear at their pleasure.   We therefore must hold parties and their attorneys to a reasonably high standard of diligence in observing the courts' rules of procedure."[58]

In an analogous situation found in *Fernandes v. United States*, U.S. District Judge Kathryn H. Vratil refused to extend the time for plaintiffs to respond to a motion to dismiss where the plaintiffs' failure to timely respond was caused by their attorney's clerical error.[59] Applying the "excusable neglect" standard for extending time under D. Kan. Rule 7.1(b) (now D. Kan. Rule 7.4), Judge Vratil found the plaintiffs demonstrated no excusable neglect

---

[55]*Id.*

[56]*Id.* at 888 (quoting *Link*, 370 U.S. at 633–34).

[57]715 F.2d 1442 (10th Cir. 1983).

[58]*Id.* at 1444; *see also Tisdale v. Darkis*, 101 F.R.D. 307, 310 (D. Kan. 1984) (dismissing case for lack of prosecution where plaintiff's counsel failed in his duty to his client).

[59]169 F.R.D. 372, 374 (D. Kan. 1996).

by simply pointing to the error of their counsel.[60]  She held that "even though plaintiffs might demonstrate that they were wholly innocent" in their failure to respond to the motion to dismiss, they could not show excusable neglect.[61]  Thus, though dismissal of the action was a harsh remedy, it was necessary to ensure "a workable system of justice."[62]

As in the cases discussed above, the facts of this case warrant the entry of default judgment against defendants.  The court warned defendants on two occasions that if their lack of diligence in defending this case continued, the court would not treat the behavior lightly.  First, in ruling on defendants' motion for extension of time to file their original answer, which motion was filed after the answer deadline with no explanation by defendants, Judge Lungstrum stated,

> The Court . . . notes that this behavior by defendants and their counsel appears to continue a pattern begun with their filing of the motion under Rule 12. As the Court noted in its previous order, defendants' Rule 12 motion was utterly without merit; defendants did not cite a single case in support of that motion, but instead filed a brief containing the word "CITE" as a placeholder in several places; and defendants did not bother to file a reply brief in support of the motion. Defendants and their counsel are admonished that *such a lack of diligence in the future litigation of this case will likely be treated harshly by this Court*.[63]

Then, in ruling on plaintiff's motion for sanctions based on defendants' filing of an inadequate answer, the undersigned noted that defendants' promise of an amended answer

---

[60]*Id.* at 375.

[61]*Id.*

[62]*Id.* (quoting *Cessna*, 715 F.2d at 1444).

[63]ECF doc. 21 at 6 (emphasis added).

was two months stale, and specifically warned defendants of the risk of default judgment

should they fail to file a sufficient revised answer by July 7, 2014:

> It appears that defendants' pattern of inaction, highlighted in Judge
> Lungstrum's April 7, 2014 order, has continued, despite Judge Lungstrum's
> express warning that it would 'likely be treated harshly by the Court' in the
> future.  Accordingly, the court, on its own motion, orders defendants to file a
> revised answer by **July 7, 2014**, or to show cause by that same date why the
> current answer does not violate Rule 11(b) (which, as should be clear from the
> discussion above, would be an uphill battle). *Defendants are warned that
> should they fail to satisfy at least one of these directives, the court will likely
> sanction defendants by striking the answer and entering default against
> defendants.*[64]

Despite the court's warnings, defendants continued to be delinquent in their defense

of this case.  They failed to file an amended answer (or any pleading to show cause why the

original answer did not violate Rule 11) by the July 7, 2014 deadline.  And although

defendants did file an amended answer on July 8, 2014, it wholly failed to correct any of the

deficiencies of defendant's original answer.  When defendants finally filed a second amended

answer addressing the deficiencies on July 16, 2014, they did so without leave of court and

without offering an adequate explanation for their untimeliness, as detailed above.

Moreover, defendants insinuate that they are represented by "national counsel" who are

responsible for doing the meat of the work on this case, with Mr. Gibson serving as "local

counsel" in a more limited role, but in the nine months that this case has been pending, no

attorney has moved for pro hac vice admission, despite repeated promises from defendants

---

[64]ECF doc. 35 at 9 (emphasis added).

that such motions were forthcoming.[65]  Defendants also have continued their practice of not filing response and reply briefs to pending motions, leaving plaintiff's arguments made in earlier briefs unaddressed.[66]  Although defendants have stated that they are "ready to go forward without further issues,"[67] this is a case in which defendants' actions speak louder than their words.[68]  The undersigned therefore recommends the entry of default judgment against defendants.

## IV.  Award of Plaintiff's Fees and Costs

Plaintiff has requested an award of attorneys' fees and costs incurred in drafting (1) its response to defendants' motion to modify the scheduling order (ECF doc. 43), (2) its motion to strike answers (ECF doc. 44), and (3) its response to defendants' motion for extension of time to respond (ECF doc. 51).  Should Judge Lungstrum decide to give defendants another chance to actively defend this case, then the undersigned recommends awarding plaintiff the requested fees and costs to compensate it for expenditures caused by defendants' nonfeasance and to deter defendants from future misconduct.  However, should Judge Lungstrum adopt the recommendations of the undersigned and enter default judgment

---

[65]*See, e.g.,* ECF doc. 39 at 5 ("Newly retained counsel will file a petition for admission pro hac vice contemporaneously with the filing of this motion.").

[66]Most recently, defendants did not file a reply to their second motion to amend the scheduling order (ECF doc. 39), and did not file timely responses to plaintiff's motion to strike answers (ECF doc. 44) and plaintiff's motion to stay deadlines (ECF doc. 45).

[67]ECF doc. 48.

[68]*See Tisdale*, 101 F.R.D. at 310 ("[W]e do not believe that counsel's statement that he is now prepared to prosecute the case is of any significance.").

against defendants, the undersigned recommends that each party be ordered to bear its own costs and fees.

IT IS THEREFORE RECOMMENDED:

1. Defendants' motion for leave to file a second amended answer (ECF doc. 39) be denied.

2.  Plaintiff's motion to strike defendants' answers (ECF doc. 44) be granted and default judgment be entered against defendants.  However, as plaintiff's first amended complaint (ECF doc. 4) seeks both injunctive relief and damages that are not liquidated in amount, it will be necessary for the court to conduct further proceedings to determine the exact nature of the recommended default judgment.

3.  Defendants' motion for extension of time to respond to plaintiff's motion to strike (ECF doc. 49) be denied.

Dated September 3, 2014, at Kansas City, Kansas.

 s/ James P. O'Hara_____
James P. O'Hara
U.S. Magistrate Judge