IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

AZ DNR, LLC, d/b/a ERC, LLC,                    )
                                               )
                        Plaintiff,             )
                                               )
        v.                                     )        Case No. 13-2599-JWL
                                               )
LUXURY TRAVEL BROKERS, INC.,                   )
d/b/a FLYER MILES;                             )
LUXURY TRAVEL BROKERS, INC.,                   )
d/b/a FLYER SMILES; and                        )
TIMOTHY W. GIBSON,                             )
                                               )
                        Defendants.            )
                                               )
_____)

## <u>MEMORANDUM AND ORDER</u>

This matter comes before the Court on defendants' objections (Doc. # 56) to the

Magistrate Judge's Report and Recommendation of September 3, 2014 ("the Report").

In the Report (Doc. # 52), the Magistrate Judge recommended that the Court do the

following: (1) deny defendants' motion for an extension of time to respond to plaintiff's

motion to strike (Doc. # 49); (2) grant in part plaintiff's motion to strike defendants'

answer and amended answer (Doc. # 44); (3) deny defendants' motion to modify the

scheduling order to allow the filing of a second amended answer and counterclaims

(Doc. #39); and (4) enter a default judgment against defendants.  For the reasons set

forth below, the Court **overrules** defendants' objections to the Report; **denies**

defendants' motion for an extension and motion to modify the scheduling order; **grants**

**in part** plaintiff's motion to strike the answers, to the extent recommended by the Magistrate Judge; and **orders** that default judgment be entered against defendants on plaintiff's claims.

## I.    <u>Background</u>

Although the procedural history of this case has been set forth in prior orders, a review of that history is apropos here.

Plaintiff filed this action on November 22, 2013.  By its amended complaint, plaintiff seeks damages and injunctive relief, based on claims of tortious interference with contractual and prospective relations, breach of contract, unjust enrichment, and a violation of the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030.  Defendants responded to the complaint by filing a motion to dismiss, but the Court denied that motion by Memorandum and Order of February 19, 2014.  In that opinion, the Court noted that defendants had failed to cite to a single case in their motion and brief, while failing to substitute citations for the word "CITE" in the brief; and that defendants had failed to file a reply brief.

Defendants failed to file an answer within the required period after the Court's order, and plaintiff requested that default judgment be entered.  By Memorandum and Order of April 7, 2014, the Court concluded that although entry of default was warranted because of the missed deadline, good cause would exist to set aside that default, given the stage of the case, the relatively short delay, and the preference for disposition of

cases on their merits.  Accordingly, the Court granted defendants' motion for leave to file an answer out of time, although it conditioned that relief on defendants' payment of costs and attorney fees incurred by plaintiff in seeking the default.  The Court noted in its order, however, that defendants' explanation for their failure to meet the deadline was vague, was not particularly compelling, was not supported by affidavit, and did not address why a motion for extension had not been filed earlier; that defendants had not filed a reply brief to address arguments raised by plaintiff; and that defendants' behavior appeared to continue a pattern begun with their filing of a motion to dismiss that was utterly without merit (which also involved the lack of citation to authority, the use of "CITE" in the brief, and the lack of a reply brief).  The Court thus admonished defendants and their counsel "that such a lack of diligence in the future litigation of this case will likely be treated harshly by this Court."

On June 5, 2014, plaintiff filed a motion for monetary sanctions against defendants.  Plaintiff argued that defendants violated Fed. R. Civ. P. 11 by stating in their answer that they are without sufficient knowledge to admit or deny plaintiff's allegations of facts that are in fact within defendants' knowledge.  Defendants did not file a response to that motion by the deadline of June 19, but defendants' counsel informally informed the Magistrate Judge that a June 18 car accident impaired his ability to file a timely response.  On June 23, 2014, the Magistrate Judge extended defendants' response deadline to June 26, 2014, but "[g]iven the noted pattern of inaction by defendants and their counsel in this case," the Magistrate Judge ordered that no further

3

extensions would be granted absent truly extraordinary circumstances.  Despite that

extension and admonition, defendants failed to file any response to the motion for

sanctions.  By Order of June 30, 2014, the Magistrate Judge denied the motion for

sanctions under Rule 11, on the basis that plaintiff had failed to satisfy all requirements

for relief under that rule.  Nevertheless, the Magistrate Judge found that defendants'

counsel likely violated Rule 11(b) in filing the answer, based on responses in the answer

that clearly were not reasonable or based on reasonably inquiry.  The Magistrate Judge

concluded as follows:

> Where does that leave us?  In correspondence with plaintiff's
> counsel, defense counsel conceded that plaintiff's allegations of
> deficiencies in the answer have "some merit," and stated that "[a] revision
> is in the works."  But that promise of a revised answer was made more
> than two months ago—and before the May 15, 2014 deadline for motions
> to amend the pleadings had passed.  To date, defendants have not filed a
> revised answer.  It appears that defendants' patten of inaction, highlighted
> in Judge Lungstrum's April 7, 2014 order, has continued, despite Judge
> Lungstrum's express warning that it would "likely be treated harshly by
> the Court" in the future.  Accordingly, the court, on its own motion, orders
> defendants to file a revised answer by **July 7, 2014**, or to show cause by
> that same date why the current answer does not violate Rule 11(b) (which,
> as should be clear from the discussion above, would be an uphill battle).
> Defendants are warned that should they fail to satisfy at least one of these
> directives, the court will likely sanction defendants by striking the answer
> and entering default against defendants.

(Footnotes omitted.)

Despite the Magistrate Judge's references to defendants' pattern of inaction and

the Court's prior warnings, and despite a stern threat of a default sanction, the deadline

of July 7, 2014, came and went without a response from defendants.  On July 8,

4

defendants did file (without leave) an amended answer, but that answer contained only minor changes from the original answer and did *not* address the deficiencies cited by the Magistrate Judge.  On July 8, defendants also filed a motion to modify the scheduling order to allow them to file counterclaims.  Although defendants did not provide a supporting affidavit, they stated the following facts: defendants retained attorney Kenneth Worth and instructed him to prepare an answer and counterclaim to be filed by local counsel Phillip Gibson; Mr. Worth informed defendants that he had followed those instructions and filed a counterclaim; defendants parted ways with Mr. Worth and retained attorney Samuel Lockhart (a California attorney) to represent them, with Mr. Gibson still acting as local counsel; Mr. Lockhart reviewed the "litigation file" and informed defendants that counterclaims had not been filed with the answer; and defendants were "shocked" and "upset" because they had been informed by Mr. Worth that a counterclaim had been filed and because the amendment deadline had passed. Defendants further argued that "[w]ithout assistance of counsel, Defendants do not have access to Pacer in order to confirm that filings that their counsel represents to them as being filed were in fact filed."  Defendants implored the Court not to punish them for the "missteps" of Mr. Worth, their former counsel, and they stated that Mr. Lockhart would file a petition for admission *pro hac vice* contemporaneously with the filing of that motion.

On July 16, 2014, defendants filed a second motion to modify the scheduling order to allow for the filing of a second amended answer and counterclaims (Doc. # 39).

5

That motion is virtually identical to the prior motion to modify, with the addition that defendants also seek to amend its recently-amended answer "to include information during recent investigation by counsel [*sic*]." Defendants also attached their proposed second amended answer and counterclaims, in which defendants appear to have addressed the pleading deficiencies cited by the Magistrate Judge. That motion remains pending and was addressed by the Magistrate Judge in his Report.[1] Plaintiff filed a response to that motion on July 18, 2014, but defendants did not file any reply brief in support of the motion.

On July 22, 2014, plaintiff filed the instant motion to strike defendants' original answer and amended answer (Doc. # 44), on the basis that defendants had not met the Court's July 7 deadline either by filing a conforming amended answer or by showing cause why they did not violate Rule 11. Defendants did not file any response to that motion, which the Magistrate Judge addressed in his Report.

On August 7, 2014, plaintiff moved that all deadlines in the case be stayed until resolution of the pending motions, and the Magistrate Judge ordered that any response by defendants be filed by August 11, 2014. On August 12, the Magistrate Judge noted that, "[c]ontinuing their pattern of inactivity," defendants had failed to respond, and he

---

[1]The Magistrate Judge confirmed with defendants' counsel that the filing of the second motion to modify was intended to moot the first motion. On July 16, 2014, defendants also filed their proposed second amended answer and counterclaims, but the Magistrate Judge ordered that that pleading be stricken because defendants had not yet obtained the Court's leave to amend.

granted the motion for a stay.  That same day, defendants moved for reconsideration of that order, based on Mr. Gibson's representations (without supporting affidavit) that he had been busy in trial and had mis-calendared the response deadline.  Mr. Gibson also indicated that he had been in contact with his clients, who "are ready to go forward without further issues, even if that means replacement of the undersigned [Mr. Gibson] as local counsel."  Mr. Gibson also argued that striking defendants' pleadings would be an extraordinarily harsh remedy.  On August 12, 2014, defendants also filed the instant motion for an extension of time to respond to plaintiff's motion to strike (Doc. # 49).  Defendants merely incorporated their arguments from their motion for reconsideration, apparently under the mistaken impression that the Court had already ruled on plaintiff's motion to strike.  Defendants did not explain why it had not filed a timely response to that motion.  On August 13, 2014, the Magistrate Judge denied the motion for reconsideration, but he noted for the benefit of counsel that the Court had not yet ruled on plaintiff's motion to strike.  On August 18, 2014, plaintiff filed a response to defendants' motion for an extension, but, once again, defendants failed to file a reply brief.  Defendants' motion for an extension remains pending and was addressed by the Magistrate Judge in his Report.

On September 3, 2014, the Magistrate Judge issued his Report and Recommendation.  The Magistrate Judge first recommended denial of defendants' motion for an extension to respond to plaintiff's motion to strike.  He noted that defendants had not specifically explained why they could not meet the August 5 deadline

for a response, and that their general reference to the press of other business was insufficient to establish the good cause and excusable neglect required under Rule 6(b)(1)(B). The Magistrate Judge also recommended that the Court grant plaintiff's motion to strike defendant's original answer and their amended answer that was late and did not cure the Rule 11 problem, in accordance with the June 30 order.

The Magistrate Judge next recommended that the Court deny defendants' motion to modify the scheduling order to allow for the filing of their second amended answer, on the basis that defendants had failed to show the necessary good cause under Rule 16(b)(4) or a lack of undue delay under Rule 15(a). The Magistrate Judge noted that defendants had not provided any explanation for their failure to cure the Rule 11 problem before the July 7 deadline. He also rejected defendants' argument that they should not suffer from Mr. Worth's failure with respect to ensuring the filing of the counterclaims before the amendment deadline. First, the Magistrate Judge noted that defendants had failed to provide an affidavit or other evidentiary support for their allegations about Mr. Worth's missteps. Second, he noted that defendants had failed to address the fact that Mr. Gibson would have known that no counterclaims had been filed. Third, the Magistrate Judge noted that, in light of a party's responsibility to supervise its attorneys in some regard, defendants should have accessed the Court file on the publicly-available PACER system or at least demanded copies of filings from their counsel. Fourth, he noted that defendants had not stated when they actually learned of the omitted counterclaims, making it impossible to judge defendants' diligence in seeking the

amendment.

Based on the denial of leave to file the second amended answer, the Magistrate Judge recommended the entry of a default judgment against defendants, based on defendants' pattern of behavior and the Court's prior warnings.  He noted that such a sanction as a result of the conduct of counsel, although harsh, was permitted under Supreme Court and Tenth Circuit precedent.   Finally, the Magistrate Judge recommended that, in the event that the Court entered a default judgment, plaintiff's request for fees and costs be denied, with each side bearing its own costs.

On September 15, 2014, new local counsel entered his appearance for defendants, and on the following day, that counsel moved for the admission *pro hac vice* of Mr. Lockhart, which motion was granted.  On September 17, 2014, defendants filed the instant objections to the Magistrate Judge's Report and Recommendation.[2]

## II.   **Analysis**

### A.   *Defendants' Motion for Extension*

The Court first resolves defendants' pending motion for an extension of time to allow them to file a response to plaintiff's motion to strike out of time.  As noted above, plaintiff filed that motion on July 22, 2014, and defendants' response was therefore due

---

[2]Pursuant to Fed. R. Civ. P. 72(b)(3), the Court determines de novo any issue involving a magistrate judge's recommendation to which a proper objection has been raised.

on August 5, 2014. *See* D. Kan. R. 6.1(d)(1). The Magistrate Judge recommended denial of this motion, based on the lack of any specific explanation by defendants for their failure to meet that August 5 deadline. In their objections to the Magistrate Judge's Report, defendants have not addressed that recommendation or made any arguments concerning this motion for extension. The Court agrees that defendants failed to show the required excusable neglect and good cause for leave to file out of time. *See* D. Kan. R. 6.1(a)(4). Accordingly, the Court follows the recommendation of the Magistrate Judge and denies defendants' motion for an extension.[3]

The Court notes that defendants will not suffer any prejudice from this ruling, as they have had the opportunity, in objecting to the Magistrate Judge's Report, to make any arguments opposing plaintiff's motion to strike. Ordinarily, the Court would not consider arguments that were not presented first to the Magistrate Judge, and defendants have raised new arguments in their objections based on the alleged failings of Mr. Gibson. Plaintiff has not challenged those arguments as improperly raised, however, and the Court concludes that it would be extremely inefficient to require defendants to make such arguments first to the Magistrate Judge at this stage. Accordingly, the Court will consider defendants' present arguments in opposition to plaintiff's motion to strike.

B.   *Plaintiff's Motion to Strike the Original and Amended Answers*

---

[3]In that motion, defendants also sought leave to respond to plaintiff's motion to stay deadlines; that request is denied as moot, however, in light of the Magistrate Judge's order granting the stay and his order denying reconsideration of the stay order, neither of which defendants challenged under Rule 72(a).

10

By his June 30 order, the Magistrate Judge found that defendants' original answer likely violated Rule 11, and he ordered defendants by July 7 either to file a revised answer or to show cause why the original answer did not violate Rule 11. Defendants did not do either by July 7. On July 8, defendants filed an amended answer, but that answer did not fix the problems cited by the Magistrate Judge in his order. Accordingly, the Magistrate Judge recommended that the original and amended answers be stricken.

In their present objections, defendants have not addressed this particular recommendation by the Magistrate Judge. Nor have they, in any submission to this Court, disputed that the original answer and the amended answer did not comply with Rule 11. (As noted above, defendants did not file a response to either plaintiff's motion for sanctions or plaintiff's motion to strike.) Thus, the Court grants this portion of plaintiff's motion as uncontested. *See* D. Kan. R. 7.4(b). Moreover, plaintiff's motion to strike is also granted on its merits. Upon review of those answers, and in light of defendants' failure to show cause as ordered, the Court finds that responses in defendants' original answer and amended answer were not based on a reasonable belief or investigation as required by Rule 11, as set forth in the Magistrate Judge's June 30 order. Accordingly, the Court grants plaintiff's motion in part, and it ordered that defendants' original answer and amended answer be stricken.

C.      *Defendants' Motion to Modify – Amended Answer*

In their motion to strike, plaintiff also requested that, if the original and amended answer were stricken, a default judgment be ordered against defendants. That request

turns on the resolution of defendants' motion to modify the scheduling order to allow the filing of a second amended answer that would cure the Rule 11 issues raised by the previous answers.  The Court thus turns to that motion.

On July 8, when defendants filed their non-conforming amended answer, they also filed a motion to modify the scheduling order to allow for the filing of counterclaims against plaintiff.  On July 16, defendants filed a new motion to modify (mooting the previous motion to modify), in which they requested leave to file not only new counterclaims, but also a second amended answer.  (Defendant also filed the second amended answer and counterclaims without leave, but that filing was stricken by the Court.)  Plaintiff has not disputed defendants' contention that the proposed second amended answer is not beset by the same Rule 11 problems of the previous answers.  In support of their July 16 motion to modify, defendants repeated the same arguments from their previous motion to modify relating to the filing of counterclaims (with the blame being placed by defendants on Mr. Worth, their former California counsel).  With respect to their request to file another amended answer, defendants' argument consisted entirely of the following statements:

> An Amended Answer was recently filed by Defendants.  That pleading should be amended to include information during recent investigation by counsel [*sic*].

Thus, as the Magistrate Judge correctly noted, defendants failed to provide any details about the timing or results of that investigation, and they therefore failed to show good cause or a lack of undue delay with respect to the amendment of their answer.  In short,

defendants utterly failed to explain why they could not have filed a conforming answer by July 7 as ordered by the Court.  Nor have defendants addressed this precise issue or offered any such explanation in their present objections.  Thus, the Court agrees that, upon the record before the Magistrate Judge, there was no basis to find good cause or a lack of undue delay to justify allowing defendants to file a second amended answer.

In their present objections, defendants do not suggest that default would not be a justified sanction for the specific conduct that occurred and continued after the Court's warnings.  Instead, they argue that the fault for all of their failures before the Court lies with Mr. Gibson, their former local counsel; that they are themselves blameless and victims of Mr. Gibson's actions; that any sanction should be imposed solely against Mr. Gibson; and that default judgment is therefore too harsh a sanction against them (and thus, by extension, they should be permitted to file a second amended answer).  In support of that argument, defendants cite to various cases stating that, as a general rule, default is an extraordinary sanction that should generally be avoided and that should not be imposed absent some fault, and in which the blame for misconduct could be placed solely with the attorneys.

As the Supreme Court has made clear, however, a party may not completely avoid responsibility for the actions of the attorney that it chooses to represent it.  In *Link v. Wabash Railroad Co.*, 370 U.S. 626 (1962), the Supreme Court upheld the district court's dismissal of the plaintiff's claim for failure to prosecute after the plaintiff's counsel failed to appear at a court conference and engaged in other dilatory conduct.  *See*

13

*id.*  The Court stated:

> There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client.  Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.  Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.

*See id.* at 633-34 (citation and footnote omitted).  The Court further explained that position in a footnote:

> Clients have been held to be bound by their counsels' inaction in cases in which the inferences of conscious acquiescence have been less supportable than they are here, and when the consequences have been more serious.  Surely if a criminal defendant may be convicted because he did not have the presence of mind not to repudiate his attorney's conduct in the course of a trial, a civil plaintiff may be deprived of his claim if he failed to see to it that his lawyer acted with dispatch in the prosecution of his lawsuit.  And if an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice.  But keeping this suit alive merely because plaintiff should not be penalized for the omissions of his own attorney would be visiting the sins of plaintiff's lawyer upon the defendant.  Moreover, this Court's own practice is in keeping with this general principle.  For example, if counsel files a petition for certiorari out of time, we attribute the delay to the petitioner and do not request an explanation from the petitioner before acting on the petition.

*See id.* at 634 n.10 (citations omitted).  In *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993), the Supreme Court reaffirmed that principle from *Link* in holding that the Circuit Court had erred (a) in suggesting that it would be inappropriate to penalize the parties for the omissions of their attorney; and (b)

14

in focusing its excusable-neglect analysis on whether the parties did all they reasonably could in policing the conduct of the attorney, rather than on whether the attorney, as the parties' agent did all he reasonably could to comply with a court-ordered deadline.  *See id.* at 396 (quoting *Link*, 370 U.S. at 633-34).  The Court held that, in determining whether the failure to meet the deadline was excusable, "the proper focus is upon whether the neglect of [the parties] *and their counsel* was excusable."  *See id.* (emphasis in original).

The Tenth Circuit has applied this same principle embraced by the Supreme Court.  In *Gripe v. City of Enid, Oklahoma*, 312 F.3d 1184 (10th Cir. 2002), the court upheld the dismissal of an action as a sanction for the failure by the plaintiff's attorney to follow court orders.  *See id.* at 1189-90 (quoting *Link*, 370 U.S. at 633-34 & n.10; citing *Pioneer*, 507 U.S. at 396).  The Tenth Circuit rejected the plaintiff's argument as follows:

> Plaintiff argues against the harshness of penalizing him for his attorney's conduct.  But there is nothing novel here.  Those who act through agents are customarily bound by their agents' mistakes.  It is no different when the agent is an attorney.  When an attorney drafting a contract omits an important clause, the client who signs the contract is bound.  When a trial attorney is poorly prepared to cross-examine an expert witness, the client suffers the consequences.  (It should be noted, however, that the mistreated client is not totally without a remedy.  There may be meritorious malpractice claim against the attorney.)

*See id.* at 1189.

In accordance with the Supreme Court's direction, then, the Court must consider whether the conduct of defendants in this litigation—as represented by their

15

counsel—justified imposition of default as a sanction. As noted above, defendants have

not argued that the failings by their counsel were not sufficiently egregious to warrant

such a sanction. Nevertheless, the Court will consider the appropriate factors, first set

out by the Tenth Circuit in *Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir. 1992), which

include the following:

> (1) the degree of actual prejudice to the [opposing party]; (2) the amount
> of interference with the judicial process; (3) the culpability of the litigant;
> (4) whether the court warned the party in advance that dismissal of the
> action [or default] would be a likely sanction for noncompliance; and (5)
> the efficacy of lesser sanctions.

*See id.* at 921 (citations and internal quotations omitted) (involving dismissal as a

sanction under Rule 37); *see also Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153,

1159-60 (10th Cir. 2013) (considering the *Ehrenhaus* factors in reviewing a default

judgment entered as a sanction under Rule 37 and 28 U.S.C. § 1927); *Mobley v.

McCormick*, 40 F.3d 337, 340-41 (10th Cir. 1994) (applying the *Ehrenhaus* factors to

a dismissal outside the Rule 37 context, based on the lack of any "principled distinction

between sanctions imposed for discovery violations and sanctions imposed for

noncompliance with other orders").

In this case, all of the *Ehrenhaus* factors weigh in favor of awarding default

judgment against defendants as a sanction for their failure to comply with the Court's

orders. Plaintiff has suffered prejudice in having the case delayed and in having to

litigate the various issues arising from defendants' conduct in the litigation, which has

also necessitated a great number of court rulings and thus interfered with the judicial

16

process.  Defendants' culpability is substantial, as they have engaged in a consistent pattern, throughout this litigation, of violating deadlines and other orders of the court (as detailed above).  The Court has warned defendants on numerous occasions that further misconduct or lack of diligence would be treated harshly, and defendants were specifically warned that they would likely suffer a default if they did not comply with the June 30 order.  Finally, the Court is persuaded, in view of the ongoing pattern of misconduct here, that lesser sanctions would be insufficient.  Thus, the Court concludes that default judgment is an appropriate sanction in this case.

With respect to this last factor, defendants might argue (had they engaged in any analysis under *Ehrenhaus*) that their conduct in litigation will be better going forward. Of course, defendants have made many similar promises in the past, including when they were blaming the removed Mr. Worth for their failings.  Defendants now insist, however, that Mr. Gibson is to blame for any past failings, which at least by implication suggests that Mr. Lockhart and their new local counsel will act properly in the litigation.[4]  Alas, the Court is not convinced.

First, the Court notes that even since Mr. Gibson was replaced as local counsel, defendants have repeated past practices.  For instance, in his Report, the Magistrate Judge specifically noted that defendants had failed to provide an affidavit or any other evidentiary support for their factual allegations.  In submitting the present objections to

---

[4]Actually, the lack of an explicit assurance by defendants to that effect in their objections is slightly disconcerting.

that Report, however, defendants again failed to support their factual allegations with an affidavit or other evidence.[5]  Defendants also sought leave to file and did file a reply brief in support of their objections to the Magistrate Judge's Report; that reply brief, however, contains only two full pages of content and fails to address many arguments and issues raised by the Report and plaintiff's response brief.

Second, the Court cannot conclude that defendants themselves are as blameless as they contend.  Defendants state in their objections that when they received on September 3 the Report and Recommendation issued on that date by the Magistrate Judge, it "came as a total shock" to them.  Again, this is an old tale from defendants, who previously argued in their two motions to modify that they were "shocked" by the revelation that no counterclaims had been filed.  Defendants state that Mr. Gibson was the only attorney tasked with monitoring dates and deadlines in the case and was the only attorney who could file papers with the Court for defendants before mid-September, and that Mr. Gibson failed to make them aware of deadlines in a timely fashion.

Other facts, however, indicate that defendants knew or should have known about errors by Mr. Gibson and this Court's rulings and admonitions.  As the Magistrate Judge noted in his Report, defendants themselves could have accessed and reviewed all

---

[5]In their reply brief, with respect to this lack of evidence, defendants argue that Mr. Lockhart, who is bound by Rule 11, prepared the fact section of their initial brief. Rule 11, however, does not require personal knowledge or foreclose the use of hearsay evidence; for that reason, courts generally require an evidentiary factual foundation in disputed matters.  Defendants also included two declarations with their reply brief, but those declarations do not address all relevant issues, as noted below.

documents filed in this case through the publicly-available PACER system. Defendants insist that they were unaware of that system and that it would be "highly unusual" for a client to directly monitor his or her case when he or she has employed counsel to do so." As the Magistrate Judge pointed out, however, it is certainly not unusual for clients to request copies of all significant filings, such as court orders and pleadings. Moreover, defendants' insistence that they should be permitted to rely on their retained counsel actually supports the principle embraced by the Supreme Court that a litigant must be bound by the acts of its attorney as agent.

Moreover, there were sufficient reasons in this case for defendants to monitor their attorneys' performance. As plaintiff points out, the April 10 check for $2,198.00 that defendants used to pay plaintiff's counsel for the sanctions imposed relating to the request for entry of default was drawn on an account of defendant Luxury Travel Brokers, Inc. The fact that defendants had to pay money to plaintiff's counsel provided reasonable notice to defendants at that time that something was amiss with their counsel's performance.

In addition, according to defendants' own statement of facts, in late May 2014 defendants parted ways with Mr. Worth and engaged Mr. Lockhart. In their motions to modify, defendants stated that Mr. Lockhart undertook a review of the "litigation file." Any reasonable review of the case file would have revealed the Court's frustrations with and admonitions to defendants, the case deadlines, and the lack of a counterclaim asserted by defendants. It would also have revealed that documents are filed

19

electronically in this district, and Mr. Lockhart, as a practicing attorney, should have been able to inform his clients that access to the court record was publicly available online. Defendants have not stated exactly when this review by Mr. Lockhart took place, but it is reasonable to assume—and to expect—that Mr. Lockhart reviewed the file shortly after he was retained in May. Thus, it is reasonable to conclude that Mr. Lockhart—and thus, defendants, through their newly-retained agent—knew or reasonably should have known about plaintiff's motion to strike and the Court's June 30 order prior to the July 7 deadline for a conforming answer.

It is this very lack of factual support—the failure to state when Mr. Lockhart reviewed the case file or when defendants actually learned that no counterclaims had been filed—that contributed to the Magistrate Judge's recommendation that defendants be denied leave to amend to add counterclaims. Despite that recommendation, defendants still fail to provide those key dates in their objections. In a footnote in their objections, defendants state that their statement of facts is "severely limited by the attorney-client communication privilege," and that "the lack of specificity and related email correspondence is not for want of supporting facts and documentation, but instead, is necessary to preserve and protect Defendants' privilege." The Court cannot accept that excuse, however. The attorney-client privilege protects only communications and does not protect underlying facts, including information concerning the activities of the attorney or the general topic of discussion between attorney and client. *See Sprint Communications Co. L.P. v. Comcast Cable Communications LLC*, 2014 WL 3611665,

at *3 (D. Kan. July 22, 2014) (Lungstrum, J.) (citing cases). Thus, the privilege would

not prevent defendants or Mr. Lockhart from revealing when and how he first undertook

a review of the case file. Moreover, defendants are free to waive that privilege if they

so choose. Defendants may choose to maintain their privilege, but the Court is not

obliged simply to trust defendants that, if the facts were revealed, good cause would exist

for the relief they request. In addition, as plaintiff notes, defendants have already (and

selectively) revealed some communications with Mr. Gibson (e.g., his statements that

he had taken care of or would fix problems, defendants' instructions to him to file certain

documents) and with Mr. Lockhart (e.g., defendants' instruction for him to check on the

status of the case), thereby arguably waiving the privilege with respect to those topics.

The Court need not decide the issue of waiver, however, as the lack of supporting facts

in itself dooms defendants' request for relief.

Additional facts also suggest that defendants acted unreasonably if they failed to

monitor the performance of their attorneys prior to the issuance of the Magistrate Judge's

Report. This excerpt from defendants' objections is especially revealing:

> Attorney Gibson never made the Defendants aware of the deadlines set by
> the Court, and when deadlines were revealed (which in most instances had
> already passed), Attorney Gibson would vow to fix his mistakes.

Thus defendants concede that they had been informed that deadlines had been missed

and that Mr. Gibson had made mistakes. Defendants also parted ways with Mr. Worth

and, at least by mid-July, were blaming Mr. Worth for his failure to file counterclaims

as requested. Nevertheless, despite knowing that both Mr. Worth and Mr. Gibson had

made mistakes, defendants (allegedly) did not see fit to follow the progress of the case online or by demanding copies of filings. Although Mr. Lockhart was retained in May, he apparently waited until June 24 to send Mr. Gibson paperwork for *pro hac vice* admission, and he did nothing to ensure that he was in fact admitted for this case. Defendants state (and by declaration submitted with their reply brief, Mr. Lockhart confirms) that they asked Mr. Lockhart to "check on the status of the case" on August 8, 2014; but that "check" must not have been very thorough, as defendants did not shift the blame to Mr. Gibson from Mr. Worth until after the Magistrate Judge's September 3 Report. If defendants had exercised any amount of diligence in monitoring the case after so many warning signs, that Report would not have come as a "total shock."[6]

For these reasons, and despite their protestations, defendants were not utterly blameless in suffering this fate, and the Court cannot be convinced that lesser sanctions would be sufficient to remedy their pattern of intransigence and violations of Court orders. The Court concludes in its discretion that default judgment is an appropriate sanction, and it orders that such a judgment be entered against defendants.[7] All existing deadlines and settings, whether or not previously stayed, including the trial date of June

---

[6]Interestingly, defendants were apparently monitoring the case well enough to receive the Magistrate Judge's Report on the day it was issued—but purportedly not well enough not to know the history of the case well enough to avoid such a shock.

[7]Plaintiff has not objected to the Magistrate Judge's recommendation that, in the event of a default judgment, each side bear its own fees and costs. Accordingly, the Court will follow such recommendation and so order, and plaintiff's motion to strike is denied to that extent.

2, 2015, are hereby vacated.

Plaintiff did not challenge the Magistrate Judge's recommendation that further proceedings be held to determine the extent of any default judgment, in light of the fact that plaintiff's complaint includes claims for injunctive relief and damages that are not liquidated in amount. Indeed, Fed. R. Civ. P. 55(b)(2) authorizes the Court to conduct a hearing to determine the damages and other relief to which plaintiff is entitled.[8] Accordingly, the Magistrate Judge is instructed to conduct further proceedings to issue a revised scheduling order for the purpose of preparing the case for a hearing before the Court to determine plaintiff's damages and other relief.

D.   *Defendants' Motion to Modify – Counterclaims*

Finally, even though the Court has granted default judgment on plaintiff's claims, there remains the issue of whether defendants should be permitted to amend to add counterclaims against plaintiff. The Magistrate Judge recommended denial of that request, in part because defendants had not indicated in their submissions when they first learned that no counterclaims had been asserted, which prevented the Magistrate Judge from determining whether defendants had acted with diligence in filing the motion to modify. Despite that recommendation, defendants have still not provided that date—or the date of Mr. Lockhart's first review of the file—in their objections. Thus, even

---

[8]The Court notes defendants are not entitled to a jury determination of damages after an entry of default, and defendants will not be able to argue the merits of their liability on plaintiff's claims at the hearing. *See Olcott v. Delaware Flood Co.*, 327 F.2d 1115, 1124, 1125 & n.11 (10th Cir. 2003).

assuming that the Court wished to absolve defendants from their counsel's sins in failing to file counterclaims (a course that the Supreme Court has counseled against, as noted above), it has no basis to find good cause or that defendants themselves acted with diligence.

Moreover, in responding to defendants' motion to modify, plaintiff argued that the proposed counterclaims would be futile (based on the position that the counterclaims could not be legally supported by the alleged oral merger agreement), and the Magistrate Judge noted that defendants had not addressed that argument. Once again, despite a warning from the Magistrate Judge, defendants have failed to address a pertinent issue—this time, whether the proposed counterclaims are legally sufficient.

For these reasons—because defendants have failed to show good cause under Rule 16(b)(4) or that they did not unduly delay under Rule 15(a), and because plaintiff's futility argument, which appears to have merit on its face, has gone uncontested—the Court denies defendants' motion to modify to allow them to assert counterclaims.

IT IS THEREFORE ORDERED BY THE COURT THAT defendants' objections (Doc. # 56) to the Magistrate Judge's Report and Recommendation of September 3, 2014, are hereby **overruled**.

IT IS FURTHER ORDERED BY THE COURT THAT defendants' motion for an extension of time to respond to plaintiff's motion to strike (Doc. # 49) is hereby **denied**.

IT IS FURTHER ORDERED THAT plaintiff's motion to strike defendants' answer and amended answer (Doc. # 44) is hereby **granted in part** to the extent recommended by the Magistrate Judge, and the Court strikes from the record defendants' original answer and amended answer.

IT IS FURTHER ORDERED THAT defendants' motion to modify the scheduling order to allow the filing of a second amended answer and counterclaims (Doc. #39) is hereby **denied**.

IT IS FURTHER ORDERED THAT default judgment is hereby entered against defendants on plaintiff's claims, with each side to bear its own fees and costs incurred to this date. All existing deadlines and settings, whether or not previously stayed, including the trial date of June 2, 2015, are hereby vacated. The Magistrate Judge is instructed to conduct further proceedings to issue a revised scheduling order for the purpose of preparing the case for a hearing before the Court to determine plaintiff's damages and other relief.

IT IS SO ORDERED.

Dated this 24th day of October, 2014, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

25